RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MELANIE PELCHA,

                *Plaintiff-Appellant*,

    *v.*

MW BANCORP, INC.; WATCH HILL BANK,

                *Defendants-Appellees*.

⎤
⎥
⎥
⎥
⎥
    >    No. 20-3511
⎥
⎥
⎥
⎥
⎦

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:17-cv-00497—Douglas Russell Cole, District Judge.

Decided and Filed:  February 19, 2021

Before:  SUHRHEINRICH, McKEAGUE, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Donald B. Hordes, RITTER & RANDOLPH, LLC, Cincinnati, Ohio, Paul Plotsker, THE PLOTSKER LAW FIRM, INC., Cincinnati, Ohio, Morris E. Fischer, MORRIS E. FISCHER, LLC, Silver Spring, Maryland, for Appellant.  Robin D. Miller, ULMER & BERNE LLP, Cincinnati, Ohio, for Appellees.

─────────────────

## AMENDED OPINION

─────────────────

McKEAGUE, Circuit Judge.  Melanie Pelcha was an employee of Watch Hill Bank ("Watch Hill") and its holding company MW Bancorp Inc.[1] until she was terminated for refusing to turn in a time-off request form.  Pelcha alleges that she was terminated on the basis of her age

─────────────────

[1]Pelcha has not appealed the district court's summary judgment order dismissing MW Bancorp Inc. from this case, so Watch Hill is the only party at issue in this appeal.

in violation of the Age Discrimination in Employment Act ("ADEA"). The district court dismissed her claims on summary judgment. We see no error in the district court's decision and **AFFIRM**.

## I

Melanie Pelcha began working as a bank teller for Watch Hill in August 2005. A new supervisor, Brenda Sonderman, began overseeing Pelcha in May 2016 and started to implement policy changes for employees. In particular, Sonderman required her direct reports to submit written requests for any time out of the office instead of sending an email as had been done in the past. These written requests had to be submitted by the middle of the month before the month of the requested time off. In early July 2016, Pelcha planned to take a few hours off from work but decided not to fill out the written request form. Instead, she orally obtained permission from Sonderman. Pelcha "bridled at the notion of having to fill out a written request," reviewed the employee handbook, and told Sonderman that she was "not filling [the request out] because [she didn't] have to." Despite her complaints, Pelcha completed the form and placed it in Sonderman's office on July 7, 2016, the day before her time off.

The next day, on July 8, 2016, Sonderman spoke with Greg Niesen, then-President and CEO of Watch Hill, at a regularly scheduled senior management meeting. Sonderman told Niesen about Pelcha's failure to turn in the form as well as other workplace issues, such as her negative attitude and failure to timely complete tasks. Niesen stated that he had zero tolerance for insubordination and told everyone present he intended to fire Pelcha. Additionally, Niesen asked Sonderman to memorialize the chain of events in a memo. Shortly thereafter, Niesen terminated Pelcha's employment on July 12, 2016, and informed her that it was because of her insubordination.

Following her termination, Pelcha sued under the ADEA for age discrimination. Pelcha was 47 years old at the time of her termination. After discovery, Watch Hill moved for summary judgment arguing that Pelcha could not establish a prima facie case of age discrimination under the ADEA. The district court granted summary judgment on the ADEA claim on April 17, 2020. This appeal followed.

## II

*A.  Legal Standards*

We review a district court's grant of summary judgment de novo in determining whether there is a genuine dispute of material fact.  *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020).  The ADEA prohibits employers from terminating employees "because of such individual's age."  29 U.S.C. § 623(a)(1).  Meeting this "because of" requirement is no simple task.  Plaintiffs must "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).  This requires showing that age was *the* determinative reason they were terminated; that is, they must show "that age was the 'reason' that the employer decided to act."  *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 350–51 (2013)).  Under *Gross*, satisfying but-for cause requires plaintiffs to show that age "*had a determinative influence on the outcome*" of the employer's decision-making process.  *Gross*, 557 U.S. at 176 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  So, to defeat summary judgment, Pelcha must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination.

Pelcha contends that this framework has been disrupted by a recent Supreme Court decision interpreting Title VII.  In *Bostock v. Clayton County*, the Supreme Court interpreted Title VII's "because of" language and concluded that it included terminations with multiple motivations, and that plaintiffs need not prove that sex was the only cause of the termination.  *See* 140 S. Ct. 1731, 1739 (2020) (stating that "[s]o long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law").  Pelcha claims that because of similar language in the ADEA and Title VII, the reasoning in *Bostock* should be extended to change the meaning of "because of" under the ADEA.

Two reasons compel us to disagree.  First, the Court in *Bostock* was clear on the narrow reach of its decision and how it was limited only to Title VII itself.  The Court noted that "none of" the many laws that might be touched by their decision were before them and that they "do

not prejudge any such question today." *Id.* at 1753. Thus, the rule in *Bostock* extends no further than Title VII and does not stretch to the ADEA. Second, even if the Court had not expressly limited their holding to Title VII, it would not change our analysis. "[I]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," we "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 436 (6th Cir. 2020) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). As discussed above, *Gross* provides the meaning of "because of" in the ADEA, and that decision controls our analysis here.

Plaintiffs may show a violation of the ADEA through either direct or circumstantial evidence. *See Scheick*, 766 F.3d at 529. "Direct evidence is evidence that proves the existence of a fact without requiring any inferences" to be drawn. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In other words, direct evidence is "smoking gun" evidence that "explains itself." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016) (quotation omitted). Conversely, circumstantial evidence requires the factfinder to draw inferences from the evidence presented to conclude that the plaintiff was terminated based on age. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).

If a plaintiff cannot show age discrimination with direct evidence, plaintiffs may attempt to show age discrimination with circumstantial evidence, which we evaluate using the three-step burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973). This analysis "first requires the plaintiff to establish a prima facie case of discrimination." *Miles*, 946 F.3d at 887. If the plaintiff succeeds, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination. *Id.* Once the employer identifies a reason, the burden shifts back to the plaintiff to prove the employer's reason is a mere pretext. *Id.* If the plaintiff prevails, the factfinder may reasonably infer discrimination. *Id.*

Regardless of the method, though, the ultimate inquiry remains the same: "the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally

discriminated against the plaintiff because of age." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). We begin with direct evidence.

### B. Direct Evidence

Pelcha's direct evidence argument focuses on three sets of statements: (1) comments by Niesen that another employee in her eighties had a "limited shelf life" and had reached her "expiration date;"[2] (2) Niesen's statement that he intended to reduce that employee's hours until she quit; and (3) Niesen's statement that he would like to "hire younger tellers."

In determining the materiality of allegedly discriminatory statements, we consider four factors, none of which are dispositive: "(1) whether the statements were made by a decision-maker . . . ; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002)). This is a high bar. For example, we have rejected the idea that telling someone to "retire and make everybody happy" was direct evidence of age discrimination, as retirement does not necessarily refer to someone's age. *See Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006).

Niesen served as the President and CEO of Watch Hill when he made these comments and was the individual who terminated Pelcha. But all the other factors suggest these statements do not create a genuine dispute of material fact. None of the statements were related to Pelcha's termination. In fact, they were not made in relation to *any* termination decision and were about an entirely different employee. Additionally, nothing in the record suggests that the statements were more than isolated remarks. Here, it appears as though these statements were only made once or twice to certain higher-level management employees. *Cf. Hannon v. Louisiana-Pac. Corp.*, 784 F. App'x 444, 448 (6th Cir. 2019) (finding that six comments within "a short span of time" were not isolated remarks). And the comments were vague in that "shelf life" and "expiration date" can refer to how long an employee has spent at a company, not simply their

---

[2]Pelcha also claims that Niesen said this employee was "too old," but the district court correctly noted that the "phrase does not appear anywhere in the record evidence she offers in support of her motion," so we do not consider it here.

age. *See Scott*, 182 F. App'x at 526 (discussing how "years of service" is a concept distinct from "age").

Furthermore, regarding Niesen's comment about a desire to hire younger tellers, we recently rejected a very similar argument. In *Miles*, we held that a stated desire to "attract young people . . . says *nothing* about terminating older employees." *Miles*, 946 F.3d at 896. The same principle applies here. Hiring younger tellers does not require the termination of older employees.

Finally, in terms of timing, the comments in question come from late 2015 or early 2016, more than six months before Pelcha's termination. We have previously suggested that time spans of six or seven months can be temporally distant. *See, e.g.*, *Miles*, 946 F.3d at 896; *Diebel*, 492 F. App'x at 528, 533 (suggesting that "seven months is longer than most cases in which this court has recognized temporal proximity").

In reviewing direct evidence, we look for "evidence from the lips of the defendant proclaiming his or her . . . animus." *Diebel*, 492 F. App'x at 526–27 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998)). Inferences are not permitted. *See Rowan*, 360 F.3d at 548. So, Pelcha has failed to create a genuine dispute of material fact on whether she was terminated due to her age based on direct evidence.

## C. Indirect Evidence

Turning to indirect evidence and the *McDonnell Douglas* framework, Pelcha must first establish a prima facie case of age discrimination. To do so, she must show that (1) she was a member of a protected class (older than 40 years old); (2) she suffered an adverse employment action; (3) she was qualified for the position held; and (4) she was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *See Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009). This light burden is "'easily met' and 'not onerous.'" *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011)).

Pelcha has met this burden. No parties dispute the first three factors, and the allegedly ageist comments discussed above by Niesen are sufficient to raise a plausible inference of discrimination. So, Watch Hill must provide a nondiscriminatory reason for her termination, which they have done by stating that Pelcha was terminated due to her insubordination. *See Raadschelders v. Columbus State Cmty. Coll.*, 377 F. Supp. 3d 844, 858 (S.D. Ohio 2019) ("The Sixth Circuit has repeatedly held that insubordination may constitute a legitimate, nondiscriminatory reason for adverse action." (citing *Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013)).

Thus, the burden shifts back to Pelcha to show that the insubordination is only a pretext to conceal that the true motive for her firing was her age. Put simply, the "commonsense" question here is: "did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). Pelcha attempts to meet this burden through five arguments: (1) that the reason has no basis in fact because she was not actually insubordinate, (2) that Niesen's allegedly ageist comments show her termination was age-motivated, (3) that the rationales for her firing shifted over time, (4) that another employee engaged in the same conduct but was not terminated, and (5) that Watch Hill's failure to adhere to its disciplinary policy shows pretext. All five fail.

### 1. No basis in fact

To show pretext on the ground that the reason for termination had no basis in fact, a plaintiff "must provide evidence that the employer's allegations never happened." *Miles*, 946 F.3d at 888–89. In this analysis, "the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Chen*, 580 F.3d at 400 n.4.

Pelcha admits to telling Sonderman that she would not fill out the form as Sonderman requested, but argues that she was not insubordinate because she eventually completed the form one day before she took time off. Further, Pelcha claims that had Niesen only investigated the incident further, he would have found out that Pelcha "had submitted her written request after all, so, in the end, there was actually no insubordination." This is incorrect. The insubordination was Pelcha's refusal to complete the form weeks in advance, as Sonderman's policy required.

Instead of completing the form, Pelcha "bridled at the notion of having to fill out a written request" and flatly refused to do it. Pelcha's late completion of the form could not cure her original refusal to follow Sonderman's directive. And Pelcha's claim that Sonderman was "not in favor of" terminating her and drafted the memo against her will is not supported by the record, as Sonderman always maintained all of the facts underlying her recommendation were true and accurate.

2. Niesen's comments

Pelcha claims that the comments made by Niesen, previously discussed as potential direct evidence, could serve as indirect evidence of an age-based motivation for her firing. These included stating that another employee was past her "expiration date" and had a "limited shelf life," and that Niesen had a preference for hiring younger tellers.

These remarks are not sufficient to create a genuine dispute of material fact. They were infrequent comments directed towards one employee (who was forty years older than Pelcha). They were not unambiguously ageist, as they could refer to duration at a company rather than age. *See Scott*, 182 F. App'x at 526; *cf. Hannon*, 784 F. App'x at 448, 451 (holding that multiple comments referring to plaintiff as a "grandma" and "little old lady" were sufficient to overcome summary judgment). They were not directed towards Pelcha, not directed towards anyone near Pelcha's age, and not made in connection with any termination decision at all. As the district court correctly concluded, "[a]llowing such comments to create a jury question would essentially mean that any potentially ageist comments, about any employee, at any time, so long as made by the same person who made the decision at issue would suffice to get past summary judgment— even if the terminated employee is of a significantly different age from the employee to whom the comments were directed. That is not reasonable."

We agree. Previously, we have found pretext when a decisionmaker told the plaintiff that he was "old and fat" and "over-the-hill," and also called him a "dinosaur" and "grandpa." *Willard*, 952 F.3d at 813. Nothing of the sort is present here, and these comments are too isolated and sparse to create a genuine dispute of material fact. *See Miles*, 946 F.3d at 896 (holding that discriminatory remarks about terminated employees "can only serve as pretext if 'a

person in a position to influence the alleged employment decision' made them and they are not 'so isolated or ambiguous as to be nonprobative.'" (quoting *Diebel*, 492 F. App'x at 532–33)).

3.    Shifting rationales

Providing evidence that an employer changed its reasons for a termination can show pretext. But, while "an employer's shifting termination rationales are evidence that the proffered rationale may not have been the true motivation for the employer's actions," *id.* at 890 (citing *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002)), providing "*additional*, non-discriminatory reasons that do not conflict with the one stated at the time of discharge does not constitute shifting justifications," *id*. at 891 (quoting *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012)).

Pelcha contends that a shift took place in the reason for her termination in the four days between July 8, 2016 and July 12, 2016. She claims that Niesen's original reason was insubordination, and that the reason he articulated when he terminated her was insubordination, but that sometime between those events he "abandoned the idea of terminating [Pelcha] for insubordination." Pelcha's evidence for this claim is that Niesen asked Sonderman to draft a memo outlining the concerns she had with Pelcha (which included her insubordination in failing to complete the form). Pelcha argues this memo represents a shift from the original reason for her firing.

But no shift exists. The memo is entirely consistently with Pelcha's termination for insubordination. The memo provides a detailed chain of events regarding Pelcha's failure to complete the time-off form, as well as other instances of Pelcha contributing to a negative work environment. To the extent that these reasons are distinct from insubordination, they were additional reasons that did not conflict with insubordination. Therefore, they are not shifting justifications. Additionally, Pelcha's claim that Niesen had no intention to fire her until he received Sonderman's memo is not supported by the record.

4. Disparate treatment

To show pretext on disparate treatment, a plaintiff must provide evidence that "employees outside the protected class[] were not disciplined even though they engaged in substantially identical conduct to that which [the employer] contends motivated its discipline [of the plaintiff]." *Miles*, 946 F.3d at 893 (quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)). In examining another employee outside the protected class, we consider whether the employee: (1) "dealt with the same supervisor," (2) was "subject to the same standards," and whether they (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Pelcha alleges that another employee failed to complete time-off request forms and was not terminated, and that this is evidence of disparate treatment between Pelcha and the other employee because that employee was under 40. Pelcha primarily relies upon deposition testimony suggesting that sometimes this employee would leave work "to pick up a prescription" without filling out a written request form. Additionally, that employee's deposition suggested that she sometimes left the office for hours during the day without filling out the request form.

However, this argument fails to create a genuine dispute of material fact for two reasons. First, the insubordination at issue here was not Pelcha's failure to fill out the form. Instead, it was her refusal to do so after Sonderman ordered her to complete it. Neglecting to complete a time off form and defiantly refusing to do so upon being asked by a superior are significantly different actions. Second, employees who are in higher positions can be held to higher standards. *See Miles*, 946 F.3d at 894 (suggesting that managers can be "subject to a different standard of conduct"). At the time of her termination, Pelcha was in a managerial position and the other employee was not. Because Pelcha and the other employee did not "engage[] in the same conduct" and were not "subject to the same standards," *Ercegovich*, 154 F.3d at 352, Pelcha fails to show disparate treatment.

5. Disciplinary policy

Finally, Pelcha claims that Watch Hill's failure to follow the "Corrective Action Plans" section of their employee manual shows pretext because she was terminated without any progressive steps taken. Not so. The policy is clear that progressive discipline is "typically" implemented and "may follow" certain steps, but the very next sentence makes clear that "[s]ome performance concerns are serious enough not to follow a progressive schedule." Indeed, Niesen was clear that he had a zero-tolerance policy for insubordination and determined he would immediately terminate insubordinate employees. And we have held that "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles*, 946 F.3d at 896 (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005)). So too here.

**III**

At bottom, "an 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Miles*, 946 F.3d at 886 (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). Considering this evidence together, we find that Pelcha has failed to create a genuine dispute of material fact as to whether her termination was motivated by her age. Therefore, we **AFFIRM** the district court.