NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0596n.06

Case No. 21-1290

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JAN LONDO, | ) | |
| Plaintiff-Appellant, | ) ) | FILED<br>Dec 27, 2021<br>DEBORAH S. HUNT, Clerk |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| UP HEALTH SYSTEMS-MARQUETTE, | ) ) | |
| Defendant-Appellee. | ) ) | |

Before: SUTTON, Chief Judge; SILER and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Jan Londo alleges that her termination by UP Health Systems was due to her anxiety, in violation of both federal and state law. The district court granted UP Health Systems summary judgment on all claims. We now affirm.

## BACKGROUND

UP Health Systems (the Hospital) hired Londo as a Licensed Practical Nurse (LPN) in its Heart and Vascular Department in October 2016. Her duties included recording patients' medical information, placing surgical orders, scheduling surgeries, and verifying medications and dosages.

Londo was assigned to work under cardiovascular surgeon Dr. Bradford Blakeman, and her immediate supervisor was Brandi Goodwin, a Senior LPN. Unfortunately, Londo's tenure was replete with mistakes, including failing to complete tasks in a timely fashion and failing to document patient information accurately. Among other errors, Londo confused two patients with

the same name at check-in after failing to verify their dates of birth and entered their medical information in the wrong patient files. On top of that, Londo had a poor working relationship with Dr. Blakeman. She began to view him as "abrasive" and "not nice," and as one who would bring her "nearly [to] tears" when they worked together. She also had difficulty working with Theresa Harger, another LPN.

In May 2017, Londo provided a doctor's note to the Hospital stating that she needed four days of leave "due to medical illness." Londo suffered from anxiety, a condition she claims was exacerbated by her job. Upon returning to work, Londo met with Goodwin and an administrator, Bryan Breeser. They gave Londo a "Documentation of Employee Counseling" form; it identified several areas in which she was underperforming and established a four-week timeline for improvement. Londo responded that she was getting "very anxious" due to her relationships with Harger and Dr. Blakeman, marking the first time she had informed anyone at the Hospital of her struggle with anxiety.

Londo was reassigned to work for Dr. Curtis Marder. But her anxiety persisted. She complained via email to Goodwin about anxiety caused by "the mounting pressure" of her "situation." In her words, she felt "set up to fail" and needed "some assistance for success." Goodwin responded that she was willing to help ease the transition to Dr. Marder. Londo then asked Goodwin for a new desk separate from Harger's so that she could have "peace and quiet." Goodwin denied the request due to the absence of other available desks.

In June 2017, Goodwin reported additional concerns about Londo's performance to Breeser. Around the same time, Londo suffered a panic attack at work and went home. On three other days, Londo called the Hospital to say migraines would keep her from coming to work. On June 23, Breeser received a doctor's note excusing Londo from work for an additional two weeks

on account of an unspecified "medical condition." On July 7, the Hospital extended her leave for another two weeks at her doctor's request. Before returning to work, Londo met with Kristen Casey, the Hospital's human resources specialist. Londo told Casey that the demands of her position were causing her stress. Londo returned to work on July 24 with a "Fitness-For-Duty Certification" from her doctor that noted no medical restrictions.

A week later, the Hospital issued Londo a corrective action plan to address her continued failures in "managing her time, being accurate in her work, [and] following specific defined processes." Londo signed the document, indicating that she "generally agreed" with the negative assessment. She never mentioned a disability or need for an accommodation. As a follow-up to the corrective action, the Hospital implemented a "Performance Improvement Plan" for Londo. The plan established a 90-day horizon over which Londo needed to improve her performance level. And it noted that Londo could be terminated before then if she failed to show significant improvement. Shortly after implementing the plan, the Hospital discovered that Londo had failed to schedule an essential, as-soon-as-possible surgery ordered for a patient with a mass on his lung. Due to Londo's oversight, the patient ended up in the emergency room, whereupon it was discovered that the mass had doubled in size and required emergency surgery. Not long thereafter, Londo's employment was terminated due to "continued performance concerns."

Londo sued the Hospital. She alleged that the Hospital violated the Americans with Disabilities Act (ADA), codified at 42 U.S.C. ch. 126, by subjecting her to a hostile work environment and terminating her on account of a disability. She also claimed unlawful retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101, 37.2701(a). The district court granted summary judgment to the Hospital. As to the claims invoking the ADA, Londo's termination claim failed because she was unable to show that the

stated reason for her termination was pretext for discriminatory animus. And her hostile work environment claim failed due to the fact that she did not address it at summary judgment. Finally, her state law claim fell short because the Elliott-Larsen Act does not protect against discrimination based on a disability.

## ANALYSIS

On appeal, Londo challenges the district court's decision granting summary judgment on her federal termination and state law retaliation claims (but not her hostile work environment claim). We review the district court's summary judgment decision de novo, viewing all evidence in the light most favorable to Londo and drawing all reasonable inferences in her favor. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020).

*ADA Claim.* The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to," among other things, the "discharge of employees," a prohibition Londo argues was violated when the Hospital terminated her employment. 42 U.S.C. § 12112(a). Because Londo attempts to prove her ADA claim through indirect evidence of discrimination, we assess her claim using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021). The first two steps of this three-step framework are easy to resolve. The Hospital assumes that Londo can establish a prima facie case of discrimination. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324–25 (6th Cir. 2021). In turn, the Hospital has articulated a legitimate, non-discriminatory reasons for its actions: it has provided sufficient evidence that it terminated Londo due to her repeated errors. *See id.* at 325.

That leaves the final element of the *McDonnell Douglas* framework—pretext. *See id.* To prevail, Londo must show by a preponderance of the evidence that the Hospital's proffered reasons

for her termination were mere pretext for disability discrimination. *Id.* at 323, 325. A plaintiff can establish pretext with evidence that "the defendant's articulated legitimate, nondiscriminatory reason either: (1) lacks a basis in fact, (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge." *Vincent v. Brewer Co.*, 514 F.3d 489, 497 (6th Cir. 2007). But Londo has failed to provide any evidence on those grounds. Instead, Londo's sole argument is that the Hospital failed to provide her a reasonable accommodation, which she says would have remedied her alleged performance deficiencies. But demonstrating a failure to accommodate is not tantamount to demonstrating an improper termination. After all, a "termination claim differs in kind and date from an accommodation claim," *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 854 (6th Cir. 2000), meaning the analysis for pretextual termination is distinct from the analysis for failure to accommodate, *see Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 798 (9th Cir. 2017) ("[A] failure-to-accommodate claim 'is analytically distinct from a claim of disparate treatment or impact under the ADA.'" (citation omitted)); *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) ("[T]he two types of claims are analyzed differently under the law."). Demonstrating pretext requires showing that an employer acted with discriminatory animus. A failure to accommodate, on the other hand, is proven through direct evidence and does not require discriminatory animus. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 992 (10th Cir. 2021); *see also Small v. Memphis Light, Gas & Water*, 952 F.3d 821, 825 (6th Cir. 2020) (distinguishing between pretext and failure to accommodate because they involve "entirely different theor[ies] of liability" and "entirely different frameworks"). In other words, even if Londo could show that the Hospital failed to accommodate her purported disability, that would not prove that the stated reason for her discharge was pretext for discrimination.

Nor is this the unusual case where the Hospital's reason for firing Londo is the very thing for which she requested an accommodation. *See EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 435 (6th Cir. 2018) (explaining that a school could not refuse to assign a teacher with mobility problems to a classroom on the first floor and then fire him for being unable to climb the stairs to his second-floor classroom). Londo contends that the Hospital's denial of her request to switch desks was the cause of her poor performance and ultimate termination. Yet she points to no evidence showing how that accommodation would have prevented her from improperly recording patient information or failing to schedule a surgery, the reasons for which she eventually was fired.

And, in any event, as the district court acknowledged, Londo's accommodation claim was not convincing. *See Londo v. UP Health Sys.-Marquette*, No. 2:18-CV-223 (W.D. Mich. Feb. 23, 2021). In her brief opposing summary judgment, Londo merely stated that an employee may request an accommodation using "plain English," and asserted that she "requested an accommodation by having her desk moved to a quieter area." But she identified no evidence showing how her request was reasonable, why it was denied, or how it would have remedied her performance errors. In these ways, Londo failed to establish a genuine dispute of fact on essential elements of her claim. *See Brumley*, 909 F.3d at 839 (listing the elements of an accommodation claim); *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (explaining that a party at summary judgment must put forward "specific facts showing that there is a genuine issue for trial" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))). And she cannot make this argument for the first time on appeal. *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("[P]arties cannot advance new theories or raise new issues in order to secure a reversal of the lower court's grant of summary judgment." (quotation marks and ellipses omitted)).

*Elliott-Larsen Act Retaliation.* Londo also contends that the district court erred by granting summary judgment to the Hospital on her state law retaliation claim. She brought this claim under Michigan's Elliott-Larsen Civil Rights Act, which prohibits discrimination on the basis of "religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws § 37.2202(1)(a). But the Act conspicuously does not prohibit discrimination on the basis of a disability. *See id.*; *Weibel v. Salon Nadwa & Day Spa, Inc.*, No. 238765, 2003 WL 1879926, at *1 (Mich. Ct. App. Apr. 15, 2003) ("[B]eing disabled is not a protected classification under [the Elliot-Larsen Act]."); *cf.* Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq.* (providing a cause of action for disability discrimination and retaliation under Michigan law). Accordingly, because the Elliot-Larsen Act prohibits retaliation only "against a person [who] has opposed a violation of this act," Mich. Comp. Laws § 37.2701(a), the district court properly concluded that the Hospital's alleged retaliation is not actionable under the statute. *See Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489–90 (6th Cir. 2020) (rejecting retaliation claim because defendant's challenged behavior was not "illegal discriminatory action" (citation omitted)).

\*      \*      \*

For the reasons discussed above, we affirm the judgment of the district court.