NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0273n.06

No. 24-5768

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EMANUELLE K.F. OLIVEIRA-MONTE, Ph. D.,    )
       Plaintiff-Appellant,    )
           )
v.    )
           )
VANDERBILT UNIVERSITY,    )
       Defendant-Appellee.    )
           )
           )

**FILED**
Jun 04, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

OPINION

Before: WHITE, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. Emanuelle Oliveira-Monte is a tenured Associate Professor in the Department of Spanish and Portuguese at Vanderbilt University. In 2019, she applied for promotion to full Professor. Vanderbilt denied her application because it judged her scholarship record insufficient in both quantity and quality. Oliveira-Monte, who has Multiple Sclerosis, then sued the school, alleging that Vanderbilt discriminated against her on the basis of her disability. The district court granted summary judgment to Vanderbilt. We AFFIRM.

I.

Vanderbilt hired Oliveira-Monte in 2002 as an Assistant Professor of Portuguese. In 2008, the University promoted her to Associate Professor and granted her tenure. Oliveira-Monte was granted medical leave for the academic year of 2014-2015. While on medical leave, Oliveira-Monte was diagnosed with Relapsing-Remitting Multiple Sclerosis. After her diagnosis, she

requested and was granted parental leave for the fall 2015 semester and medical leave during the fall 2017 semester. In 2019, Oliveira-Monte applied for promotion to full Professor.

Like most universities, Vanderbilt has several levels of professorial rank. Both Associate Professors and full Professors hold academic tenure. To obtain promotion from Associate to full Professor, Vanderbilt considers a candidate's research, teaching, and service record:

> Vanderbilt expects the level and quality of achievement in (1) research, scholarship, or creative expression; (2) teaching; and (3) service to be equivalent to that required of Professors in leading departments and schools of other major research universities. The candidate must have attained national or international recognition among leading scholars in their/his/her discipline for sustained and excellent research, must have taught the courses requested by the department or school at a consistently high level of effectiveness, and must have demonstrated a well-developed and recognized record of service both to the University and their discipline.

*Id.* at 968.

The review process for promotion to full Professor is multi-tiered. First, the full Professors in the candidate's department must vote in favor of promotion. The department's recommendation is then forwarded to the appropriate Dean. In the College of Arts and Sciences—Oliveira-Monte's college—the Senior Advisory Review Committee (SARC), composed of representatives from various departments within the college, also reviews the candidate's file. SARC does not vote or make a formal recommendation, but the Dean uses SARC's assessment to inform his own decision.

An application may move forward only if the Dean (subject to a two-thirds veto by the department's full Professors) concurs in the department's positive recommendation. When a Dean recommends promotion, that decision is then reviewed by the Promotion and Tenure Review Committee (PTRC) and the Provost. Promotion requires the signoff of both. If a candidate clears each level of review, the Chancellor, upon the Provost's recommendation, promotes the candidate.

Vanderbilt requires candidates to submit various documents in their promotion application, including a curriculum vitae, a teaching summary, course evaluations, and a "statement of endeavors" describing the candidate's "teaching philosophy and research objectives." R. 53-8, Guidelines and Call, PageID 984–89. Candidates must also submit a list of external reviewers. The external reviewers, some chosen by the candidate herself and others by the candidate's Department Chair, then submit "letters of evaluation" to the university. *Id.* at 989. Vanderbilt requires at least six letters and prefers that reviewers be "leading scholars . . . who hold the rank of full professor at top institutions" in the candidate's field. *Id.* at 989–90.

After applying for promotion to full Professor, Oliveira-Monte passed the first level of review: the full Professors in her department unanimously voted to recommend her for promotion. Her application then went to SARC and John Geer, Dean of the College of Arts and Sciences.

There, her application faltered. SARC commented positively on her teaching and service records, noting that Oliveira-Monte "continues to be highly effective" as a teacher and that her service record was "appropriate for promotion to professor." R. 54-33, SARC Mem., PageID 2017. However, the Committee deemed her productivity as a scholar "thin" and described the external reviewers' reception to her most recent book as "lukewarm at best." *Id.* The Committee also discussed "whether this promotion was a bit premature." *Id.*

Dean Geer then denied Oliveira-Monte a promotion. He concluded that Oliveira-Monte "has not satisfied the standard for 'excellence in research.'" R. 54-34, Geer Mem., PageID 2023. Geer based that conclusion on the quantity and quality of Oliveira-Monte's scholarly record.

First, Dean Geer questioned the quantity of her post-tenure scholarly output. By the time she applied for promotion to Professor, she had published two books: *Writing Identity: The Politics of Contemporary Afro-Brazilian Literature* (2007) and *Barack Obama is Brazilian: (Re)*

*Signifying Race Relations in Contemporary Brazil* (2018). She had also published eight journal articles, five book chapters, two book reviews, and a translation. But many of those publications predated her award of tenure in 2008. Since being granted tenure, she had published one book, one journal article (with a second forthcoming), and several book chapters.

Dean Geer described Oliveira-Monte's post-tenure "research productivity" as "low." R. 54-34, Geer Mem., PageID 2020. He based that determination in part on the external reviews. Multiple external reviewers characterized Oliveira-Monte's post-tenure production as somewhat lacking. One described her post-tenure output as "relatively small" and "considerably inferior" to her pre-tenure output. R. 54-20, External Review Ltr. 3, PageID 1902. Another said her post-tenure output was "not extensive." R. 54-24, External Review Ltr. 7, PageID 1918. Moreover, Geer pointed to lengthy gaps between her most recent articles. In 2008, Oliveira-Monte published an article in the *Vanderbilt EJournal of Luso-Hispanic Studies*. Oliveira-Monte next published an article five years later, in 2013, in the *Luso-Brazilian Review*. Geer further noted the "large gap" between her 2013 article and a then-forthcoming article with the *Hispanic Review*. R. 54-34, Geer Mem., PageID 2020.

Second, Dean Geer questioned the quality of Oliveira-Monte's scholarship. His analysis mainly focused on Oliveira-Monte's most recent book, *Barack Obama is Brazilian*. Reading Oliveira-Monte's external reviews, he deduced that the book was of "uncertain quality." *Id.* He noted that none of Oliveira-Monte's reviewers offered "strong and/or detailed praise for the book," and a majority of reviewers "engage[d] it only briefly and d[id] not spend much more than a full paragraph discussing it." *Id.* In Geer's assessment, such tepid intellectual engagement could not be interpreted as "positive." *Id.* Other reviewers, who did engage somewhat with the book, provided only "largely descriptive" discussions, rather than "scholarly assessment[s] of the book's

contribution to [the] field of comparative Brazilian studies." *Id.* at 2021. Geer characterized these responses as "worrisome" because they did not suggest that "the book constitutes an innovative and original piece of scholarship . . . likely to influence the future scholarly development of the field." *Id.* In sum, he deduced that the reviewers judged the book "competent, but not compelling." *Id.* at 2022. Geer considered that judgment "no small matter since we expect our full professors to be . . . intellectual leaders in their disciplines." *Id.* at 2021.

Geer expressed further concerns. First, he noted that Oliveira-Monte's most recent book earned no nominations "for any major external awards or prizes." *Id.* at 2022. He described such recognition as "not a prerequisite for a book to be considered excellent," but nevertheless "an important signal of the book's quality." *Id.* (emphasis omitted). And he commented that "it is not uncommon for faculty members coming up for promotion to full [professor] primarily on the basis of a book to have received such external recognition." *Id.* Second, Geer expressed "concern" that Oliveira-Monte's second book was published by an "academic trade press," Palgrave McMillan, rather than a major university press. *Id.* at 2019–20. Geer deemed publication in a major university press a "really important signal[]" of a book's quality. R. 53-9, Geer Dep., PageID 1042.

Geer linked together his evaluations of quantity and quality. He suggested that had he been more confident in the quality of Oliveira-Monte's work, concerns about the quantity of her output might have been "less salient." R. 54-34, Geer Mem., PageID 2020. But given her "low rate of productivity," the book needed to be "excellent" rather than only "solid." *Id.* at 2022.

At the end of his letter, Geer mentioned that Oliveira-Monte's external reviewers had commented on the promise of her next book project, and he noted that the new book "could provide the basis for a successful promotion down the road." *Id.*

Subsequent efforts to reverse Dean Geer's decision failed. As permitted by university policy, Oliveira-Monte's departmental colleagues unanimously voted to appeal Deen Geer's decision. The appeal then went before the PTRC, which considered Oliveira-Monte's application and voted not to approve the department's recommendation of promotion. In a brief memo, the PTRC explained that its "principal concern" was Oliveira-Monte's "scholarly record, which was determined to be insufficient to meet [Vanderbilt's] standard of excellence." R. 54-39, PTRC Mem., PageID 2052.

After the PTRC issued its ruling, Oliveira-Monte filed an internal grievance alleging, among other things, that Vanderbilt's decision was discriminatory and retaliatory on the basis of her disability. The Grievance Committee investigated the matter and found no evidence of discrimination or retaliation. The Chancellor then sustained the Grievance Committee's findings. Vanderbilt's Office of Equal Opportunity and Access also investigated the matter and concluded that Vanderbilt made its non-promotion decision "for legitimate nondiscriminatory business reasons." R. 54-42, Inv. Report, PageID 2124.

In 2022, Oliveira-Monte sued Vanderbilt. She brought two claims under the Americans with Disabilities Act (ADA): discrimination and retaliation. Vanderbilt moved to dismiss Oliveira-Monte's claims, and the district court dismissed the retaliation claim. Vanderbilt then moved for summary judgment on the discrimination claim, which the court granted. Oliveira-Monte appealed. She challenges only the district court's grant of summary judgment on her discrimination claim.

## II.

We review de novo a district court's grant of summary judgment. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Summary judgment is appropriate when

there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There is no genuine dispute of material fact when a reasonable jury could rule only for the moving party. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). We must view the evidence in the nonmoving party's favor. *Williams*, 947 F.3d at 391. As the moving party, Vanderbilt bears the burden of demonstrating that no genuine dispute of material fact exists. *Hrdlicka*, 63 F.4th at 566.

### III.

The ADA prohibits employers from denying a promotion "on the basis of disability." 42 U.S.C. § 12112(a); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996). When, as here, a plaintiff uses circumstantial evidence to establish disability discrimination under the ADA, we employ the *McDonnell Douglas* burden-shifting framework. *Hrdlicka*, 63 F.4th at 566; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under that framework, a plaintiff must first make out a prima facie case of discrimination. *Hrdlicka*, 63 F.4th at 566. The employer must then respond by presenting a legitimate, nondiscriminatory explanation for its action. *Id.* at 567. If the employer does so, the burden shifts to the plaintiff to show that this reason was pretextual, and that discrimination motivated the adverse employment action instead. *Id.*

Vanderbilt contests whether Oliveira-Monte has made out a prima facie case. But Vanderbilt has also presented a legitimate, nondiscriminatory reason for not promoting Oliveira-Monte: that her research record "did not meet Vanderbilt's standard of excellence in terms of both quantity and quality." Appellee Br. at 36. To satisfy its burden of production, Vanderbilt need only "clearly set forth, through the introduction of admissible evidence, the reasons for" denying Oliveira-Monte a promotion. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981).

Vanderbilt did just that. Dean Geer clearly articulated his belief, based on his own assessment in conjunction with "input from [his] team of academic deans" and SARC, that Oliveira-Monte's file gave rise to "some serious concerns" regarding both the quality and quantity of her scholarship. R. 54-34, Geer Mem., PageID 2019–20. That easily constitutes a legitimate, nondiscriminatory rationale. *See Thrash v. Miami Univ.*, 549 F. App'x 511, 518 (6th Cir. 2014). Because Vanderbilt has come forward with a legitimate, nondiscriminatory explanation, we need not analyze whether Oliveira-Monte has presented a prima facie case. *See Martin v. Barnesville Exempted Vill. Sch. Bd. of Educ.*, 209 F.3d 931, 935 (6th Cir. 2000) (assuming without deciding that the plaintiff established a prima facie case). We can proceed directly to *McDonnell Douglas*'s third stage: pretext.

To demonstrate pretext, Oliveira-Monte must "produce sufficient evidence from which a jury could reasonably reject [Vanderbilt's] explanation" for why it did not promote her and instead infer that discrimination motivated the decision. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (citation omitted). Plaintiffs typically establish pretext by showing that the employer's proffered reasons: (1) had no basis in fact; (2) did not actually motivate the employer's action; or (3) were insufficient to warrant the employer's action. *Id.* But these methods are not exclusive. Rather, the categories "marshal[] evidence" and help us "focus[]" our attention on the "ultimate inquiry": did Vanderbilt deny Oliveira-Monte a promotion "for the stated reason or not?" *Id.* (citation omitted). Regardless of whether the plaintiff strays from the traditional categories, she must "articulate some cognizable explanation of how the evidence she has put forth establishes pretext." *Id.* Thus the question for us is whether Oliveira-Monte has submitted sufficient evidence such that a reasonable juror could reject Vanderbilt's explanation and infer unlawful discrimination instead.

A.

Oliveira-Monte first argues that Vanderbilt's reliance on the *quantity* of her scholarship was pretextual. She does not dispute Vanderbilt's count of her publications. Rather, she argues that her publication count was insufficient to warrant the promotion denial because Vanderbilt failed to consistently apply any objective, "quantitative" promotion standard. Her argument fails.

Vanderbilt requires candidates for full Professor to demonstrate "sustained and excellent research." R. 53-7, Faculty Manual, PageID 968. Dean Geer admitted that standard is "very open-ended." R. 53-9, Geer Dep., PageID 1038. In the Title VII context, we have noted that "subjective evaluation processes" can provide cover for discrimination and warrant "particularly close scrutiny." *Grano v. Dep't of Dev.*, 699 F.2d 836, 837 (6th Cir. 1983) (per curiam). However, subjectivity in promotion decisions is not itself illegal. *Id.* Only *discrimination* in such decisions is. *Id.*; *see also Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001); *Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005). "Without more evidence than the subjectivity of the evaluation, a plaintiff does not raise a genuine issue of fact over pretext." *Harris v. City of Akron*, 836 F. App'x 415, 421 (6th Cir. 2020). Thus Oliveira-Monte does not move the ball by merely pointing to subjectivity in Vanderbilt's promotion standards.

Oliveira-Monte further argues that Vanderbilt either inconsistently stated or applied its promotion standards. She alleges that after she was denied a promotion, Geer said that publication of a third book is required for promotion. But Oliveira-Monte notes that Geer, at another point, indicated that there was no quantitative standard with respect to publication. And she points out that Vanderbilt promoted several professors who had published only two books.

Oliveira-Monte's arguments miss the mark. Dean Geer did not inconsistently state Vanderbilt policy. During his meeting with Oliveira-Monte, Geer did not suggest that promotion

to full Professor always requires publication of a third book. In fact, he noted that sometimes applicants are promoted to full Professor with only two books—but only when the second book is "a game changer" in the applicant's field of scholarship. R. 58-5, Meeting Tr., PageID 2298. As another administrator put it, "the point is that not all books are the same . . . . [T]he quality of the book is crucial . . . ." *Id.* Thus when Geer stated in his deposition, "[t]here's no quantitative standard," R. 53-9, Geer Dep., PageID 1038, that statement was wholly consistent with others he'd made.

For similar reasons, the mere fact that several other professors were promoted after publishing only two books does not suggest pretext. A plaintiff may demonstrate pretext by showing that other employees "outside the protected class" were promoted, "even though they engaged in substantially identical conduct to that which the employer contends motivated its" decision not to promote the plaintiff. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012); *see also Burks v. Yellow Transp., Inc.*, 258 F. App'x 867, 877 (6th Cir. 2008).

Oliveira-Monte comes nowhere near clearing that hurdle. She identifies others who were promoted to full Professor after publishing just two books. But she says nothing about whether any of these professors had a disability, so she has not established that they are "outside the protected class." *Chattman*, 686 F.3d at 349. Nor has she pointed to any record evidence showing that her promotion file was "substantially identical" to theirs. *Id.* It is true that each of these professors had published just two books, as had Oliveira-Monte; but the record shows that to be promoted with only two books, the second work would need to be a "game changer" in the field. R. 58-5, Meeting Tr., PageID 2298. Here, Oliveira-Monte has produced no evidence regarding the quality of the other professors' books. So we have no basis to conclude that the other

professors' promotion files were "substantially identical" to Oliveira-Monte's. *Chattman*, 686 F.3d at 349.

Oliveira-Monte makes one more argument: she alleges that Vanderbilt improperly factored her disability and medical leave into its evaluation of her publication record. Alleging that her disability "was discussed during the promotion process," Appellant Br. at 19, she first points to a statement by a PTRC member, who wrote that Oliveira-Monte's record "reads a great deal like a file that should have waited for the next book, but they rushed it through to reward/support a colleague with health issues." R. 54-38, Reader Rpt. 2, PageID 2049. And she references language from the minutes of a meeting where her departmental colleagues, in unanimously deciding to appeal Dean Geer's decision, mentioned her medical issues. These statements, Oliveira-Monte alleges, show that Vanderbilt unlawfully considered her disability.

We disagree. Discriminatory remarks made by "a person in a position to influence the alleged employment decision" may suggest pretext. *Miles*, 946 F.3d at 896 (citation omitted). However, "isolated or ambiguous" comments are not enough. *Id.*; *see also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 327 (6th Cir. 2021). The PTRC member's comment here is not probative of discrimination. Not only is the comment "isolated," but it evinces no hostility towards Oliveira-Monte based on her disability. Rather, the reference more naturally reads as commentary on the motivations of Oliveira-Monte's colleagues. The minutes Oliveira-Monte references also evince no discrimination. In the minutes, her colleagues—who unanimously supported her nomination—commented that while they did not believe that Oliveira-Monte deserved promotion simply because of her health issues, the fact that she "continued to publish, make public appearances, teach, and serve" Vanderbilt "despite exceptionally serious health problems" should count as a mark *in her favor*. R. 58-7, Appeal Minutes, PageID 2318. Such praise of her

perseverance obviously betrays no hostility by anyone, let alone the relevant decisionmakers, like Geer, who were not present at the meeting captured by the minutes. We fail to see how a reasonable juror could, based on these comments, infer that Vanderbilt declined to promote Oliveira-Monte because of her disability.

B.

Oliveira-Monte also argues that Vanderbilt's reliance on the *quality* of her scholarship was pretextual. She notes that her departmental colleagues recommended her for promotion unanimously, and her department chair labelled her research "excellent." Appellant Br. at 14. She further points to her external reviewers, who, she says, "issued effusive support" for her promotion and described her second book, *Barack Obama is Brazilian*, as "critically sophisticated"; a "unique approach"; and "insightful, timely, and highly original." *Id.* Oliveira-Monte contrasts that laudatory praise with Dean Geer's more sour assessment. This "stark divergence" in assessments, she says, "lends credence" to her claim of discrimination. *Id.* at 15.

At most, Oliveira-Monte's assertions suggest that the "the record demonstrates conflicting evaluations of the quality of [her] work." *Id.* at 14. But "conflicting evaluations" alone are not evidence of pretext. The bare fact that Geer disagreed with Oliveira-Monte's departmental colleagues and external reviewers does not show pretext. *See Davis v. Delta College*, 2025 WL 474971, at *5 (6th Cir. Feb. 12, 2025) (interpreting Michigan's Elliott-Larsen Civil Rights Act); *cf. Sutherland v. Mich. Dep't of Treas.*, 344 F.3d 603, 619 (6th Cir. 2003) ("The fact that one interviewer might have disagreed with the evaluation of . . . another interviewer . . . simply indicates that the two individuals disagree as to subjective factors, which one would expect might happen from time to time.").

Oliveira-Monte makes much of the fact that her external reviewers all supported her promotion. Given that support, she alleges that Vanderbilt's explanation was insufficient to warrant the non-promotion. But Oliveira-Monte fails to present evidence from which a reasonable juror could conclude that Dean Geer's treatment of Oliveira-Monte's external reviews was pretextual. Again, the mere fact that Geer and the reviewers reached a different conclusion does not suggest pretext. *Davis*, 2025 WL 474971, at *5; *Sutherland*, 344 F.3d at 619. Moreover, Geer explained that he viewed the bottom-line recommendations as less important than the content of the letters because "almost all" external reviewers recommend promotion; Geer thus felt that the ultimate recommendation itself "doesn't tell you very much." R. 53-9, Geer Dep., PageID 1035–36. Oliveira-Monte presents no evidence to suggest that Geer's decision to discount the recommendations' conclusions and instead home in on the reviews' substance was pretextual.

Oliveira-Monte similarly provides no reason for us to second-guess Geer's seasoned assessment of Oliveira-Monte's external reviews. As Dean, Geer had read "hundreds of promotion files" and "probably thousands of external letters." *Id.* at 1030. In doing so, he had developed an expertise in how to evaluate "the content of the letters." *Id.* at 1036. That someone else *could* have read Oliveira-Monte's external reviews more positively does not move the needle. Perhaps one can imagine an academic dean badly mischaracterizing external reviews (or similar evidence of an applicant's record) such that one could find that the dean's decision lacked a factual basis or did not actually motivate the decision. *Cf. In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988) ("The more questionable the employer's reason, the easier it will be for the jury to expose it as pretext."). But here, we are quite far from such a scenario. So we are left with the conclusion that Geer meant what he said: he deemed the external reviews' "lack of engagement" with Oliveira-Monte's second book "worrisome" and an indication that the reviewers found the book "competent, but not

compelling."  R. 54-34, Geer Mem., PageID 2021–22.  That conclusion forecloses a finding of pretext.

In sum:  we find no evidence of pretext in Vanderbilt's assessment of Oliveira-Monte's scholarly record.  "Universities prune the ranks—sometimes ruthlessly, so that only the best rise." *Kuhn v. Ball State Univ.*, 78 F.3d 330, 331 (7th Cir. 1996) (Easterbrook, J.).  Vanderbilt did just that here, and it acted well within its discretion in doing so.  In saying that, we do not directly pass judgment on Oliveira-Monte's scholarly capacity.   Our task is not to decide whether Oliveira-Monte's scholarship was in fact "excellent."   Rather, our task is to determine only whether Oliveira-Monte has shown that Geer's explanation for the promotion denial was a mere cover for illegal discrimination.  She has not met that burden.

\* \* \*

We AFFIRM.