NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0227n.06

Case No. 22-1510

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 12, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DENISE A. KERWIN, | ) | |
| Plaintiff-Appellant, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMUNITY ACTION AGENCY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | OPINION |

Before: SILER, KETHLEDGE, and WHITE, Circuit Judges.

SILER, Circuit Judge. In 2019, Defendant Community Action Agency (the "Agency") discharged Plaintiff Denise Kerwin after 28 years of employment. Kerwin subsequently sued the Agency for retaliation, age discrimination, and disability discrimination under both state and federal law. The Agency filed a motion for summary judgment, which the district court granted. We **AFFIRM**.

**I.**

The Agency hired Kerwin in 1991, and she primarily worked as an Early Childhood Specialist. Kerwin had a documented history of disruptive behavior in staff meetings and insubordination toward her supervisor, Marshelle Hawver, dating back to 2001. Hawver noted in a March 2001 memo that Kerwin called her "annoying" during a staff meeting. In another memo from April 2003, Hawver stated that Kerwin disrupted a staff meeting by "ripping in half the draft document we were reviewing." For her part, Kerwin complained about the length of staff

meetings, and Hawver agreed to accommodate her "by allowing a break at the end of each hour" and by allowing her to "stand up or move around the room" or "leave the room for a bathroom break at any point during the meeting."

In 2010, Kerwin was tested for learning disabilities. Following the administration of several tests, the post-test report concluded that she "appears to meet the requirement of a Learning Disorder NOS [Not Otherwise Specified]." The report noted that although she "struggles with new written information and complex patterns," she was "a very eloquent, well read, well informed individual" who "does very well with oral presentation of material." Kerwin acknowledges that the report did not "say anything about needing to be accommodated for verbal outbursts." Kerwin met with Hawver and the Human Resources Director and informed them of her diagnosis. Hawver told Kerwin that the Agency would accommodate her by allowing her to get up and walk around during meetings or step out if she so needed.

In January 2017, Kerwin received a "documented verbal warning" from Hawver. It expressed concern about an "ongoing cycle for years of you undermining yourself as a supervisor or you undermining me as your supervisor." The warning stated "[t]he next step will be a written reprimand."

Two months later, Kerwin received a written reprimand after she "presented [her]self inappropriately as an administrator," and showed a "[l]ack of respect/boundaries for [her] supervisor." The reprimand warned that "[t]he next disciplinary step will be termination of employment." Although Kerwin asked Hawver to tell her to leave a staff meeting if she started "hav[ing] difficulty in meetings" by "speaking out of turn, rambling, etc.," Hawver stated this was not her responsibility. Instead, she said that Kerwin "needed to conduct [her]self appropriately" during staff meetings.

In December 2018, Kerwin received another written reprimand and was suspended for five days without pay after she "interrupted discussion, ma[de] comments . . . that [she] was not going to follow the proposed changes" and "indicated that [she] did not have to do what was expected . . . in a condescending manner" during a staff meeting. Although Kerwin's previous disciplinary record "indicated the next step would be termination of employment," she was not terminated and was instead warned that "[t]he next, and final step, of progressive discipline will be termination of employment."

Kerwin was fired in March 2019 after she "made inappropriate comments" during a staff meeting that "affect[ed] the team dynamic." At the meeting, she referred to her coworker as "cellmate[] Nate" and replied during the course of a discussion, "we're doing that, damn it" before acknowledging that "we're [not] allowed to swear anymore." The separation letter pointed to Kerwin's suspension following the December 2018 staff meeting, the fact that she had already received her "last warning before termination," her actions at the March staff meeting, and her "continual lack of respect and boundaries" as the reasons for termination.

Kerwin, who was 60 years old when she was terminated, was subsequently hired by Catholic Social Services. She did not request any accommodations. The Agency hired Emma Garrison, who was in her thirties, to replace Kerwin.

Kerwin says she was fired because of her age and a learning disability that prevented her from sitting through the organization's monthly staff meetings without being disruptive. The Agency says it terminated her because of a documented track record of disrespect and insubordination toward Hawver. After exhausting her administrative remedies, Kerwin filed this lawsuit, asserting claims for retaliation because of her disability, age discrimination, and disability discrimination under both Michigan and federal law. The district court granted summary judgment

for the Agency. It also (1) dismissed Kerwin's age discrimination claims because she failed to prove that the Agency's proffered reason for terminating her was pretext; (2) dismissed her three disability-related claims because her arguments were unpersuasive and without merit; (3) dismissed her Americans with Disabilities Act (ADA) retaliation claim because she failed to raise it before the EEOC; and (4) declined to exercise jurisdiction over the remaining state law retaliation claim.[1] Kerwin appealed.

## II.

A district court's grant of summary judgment is reviewed de novo, *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1226 (6th Cir. 2022), and we draw all "reasonable inferences in favor of the nonmoving party," *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 445 (6th Cir. 2021) (citation omitted).

## A.

Kerwin alleges age discrimination under both the Age Discrimination in Employment Act (ADEA) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). We will analyze these claims together under the ADEA framework because, on the issue of pretext, Kerwin fails to meet the ADEA's lesser standard.[2]

Under the ADEA, an employer may not fail or refuse to hire, discharge, or discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." *Geiger v. Tower Auto.*, 579 F.3d 614, 620

---

[1] Kerwin does not contest the court's holdings regarding either her ADA retaliation claim or state retaliation claim.

[2] ELCRA retaliation claims "require[] a higher burden on plaintiffs at the pretext stage" than ADEA claims, but we can apply the lower ADEA standard to both retaliation claims when, as here, "we do not find a genuine issue of material fact as to pretext." *Brown*, 814 F. App'x at 79 n.5 (citing *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 438–39 (6th Cir. 2002)).

(6th Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)). It is the plaintiff's responsibility to demonstrate "that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141–43, 147 (2000)).

Because Kerwin relies only on circumstantial evidence, we analyze her evidence under the *McDonnell Douglas* framework. *Geiger*, 579 F.3d at 622; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–07 (1973). Under that framework: (1) the plaintiff must establish a prima facie case of discrimination; (2) if the plaintiff succeeds at step one, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its decision; and (3) if the defendant succeeds at step two, the plaintiff must demonstrate that the proffered reason for the decision "was merely a pretext for discrimination." *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (citations omitted).

The parties do not dispute that Kerwin established a prima facie case of age discrimination or that the Agency offered a legitimate reason for its termination decision. The dispute is whether Kerwin showed pretext. Kerwin argues that the court erred by not accepting her "substantial proof of pretext" including the Agency's "use of [her] disability itself and the minor, sporadic nature of [her] conduct as a basis for firing [her]." To prove pretext, Kerwin must show that the Agency's proffered reason for firing her "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citation omitted). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

To show pretext on the ground that the Agency's proffered reason for firing her lacked a factual basis, Kerwin "must provide evidence that the employer's allegations never happened." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021) (quoting *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888–89 (6th Cir. 2020)). The Agency says it fired Kerwin because of her "continual lack of respect and boundaries," and this is supported by a documented history of disrespect and insubordination during staff meetings. In response, Kerwin relies on her pretext arguments made in support of her disability discrimination claim. With respect to that claim, she does not contend she satisfies the first pretextual ground, thereby forfeiting any argument to that end.

As for the second pretextual ground, Kerwin failed to rebut the Agency's evidence that her insubordination and lack of respect motivated her termination. The Agency provided documentation of Kerwin's progressive discipline, history of insubordination, and lack of respect for her supervisor. Furthermore, the Agency's CEO, Human Resources Director, and Hawver all testified that Kerwin's termination was motivated by her insubordination and inappropriate behavior during staff meetings. Kerwin has not shown that her behavior did not motivate the decision to terminate her.

As to the third pretextual ground, Kerwin has failed to show that disrespectful and insubordinate behavior is insufficient to warrant termination. And we have repeatedly held that insubordination is a sufficient reason to terminate an employee. *See, e.g.*, *Pelcha*, 988 F.3d at 326. Kerwin failed to satisfy her burden under the *McDonnell Douglas* framework, and we affirm the district court.[3]

---

[3] Kerwin also argues that the district court erred by applying the "pretext plus" standard. Under this standard, a court improperly requires a plaintiff to "show both pretext *and* discriminatory intent" after "the elements of a prima facie case have been met." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001) (emphasis added). However,

**B.**

Kerwin also claims disability discrimination under the ADA and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA). We generally analyze ADA and PWDCRA claims using the same framework, particularly when, as here, the plaintiff "provides no argument as to why we should treat the claims separately." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 n.4 (6th Cir. 2020) (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012)).

The ADA prohibits employers from discharging a qualified employee "on the basis of [a] disability." 42 U.S.C. § 12112(a). Because Kerwin only points to circumstantial evidence, we again rely on the *McDonnell Douglas* framework. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319–20 (6th Cir. 2019). For her ADA claim, Kerwin must also prove that her disability was a but-for cause of her termination; *id.* at 319 (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc)); and for her PWDCRA claim, she must prove that her disability was a "significant factor" in the decision to terminate her, *Schafer v. Mid-Michigan Orthopaedic Inst., PLLC*, No. 341972, 2019 WL 691697, at *7 (Mich. Ct. App. Feb. 19, 2019) (citing *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001) and *Aho v. Dep't of Corr.*, 688 N.W.2d 104, 109 (Mich. Ct. App. 2004)).

Kerwin alleges that the district court erred by (1) rejecting her pretext evidence and specifically refusing to credit her "similarly-situated" comparators evidence; (2) applying too strict a standard for finding that she failed to reasonably request an accommodation; and (3) rejecting her argument that she engaged in the interactive process.

---

here, the court explicitly held that it was "not 'resolving' a question of intent, rather it [was] examining whether Kerwin has produced sufficient evidence for a reasonable jury to make a determination of causation should the case proceed to trial." Therefore, the court did not apply the incorrect standard.

**1.**

Kerwin argues that her evidence of pretext was sufficient, and therefore the district court erred in rejecting it. The district court determined that Kerwin established a prima facie case of discrimination at step one,[4] that Kerwin's "history of disrespect to Hawver and repeated insubordination in staff meetings" constituted a legitimate and nondiscriminatory reason for terminating her at step two, and at step three, the Agency's reasons for terminating her were not pretextual.

Kerwin must provide evidence "which tends to prove that an illegal motivation was *more likely than that offered by the defendant*" to prove that the proffered reason for termination did not actually motivate the decision. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis in original), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). She has not done so. After all, her disability diagnosis was for a learning disability, and nothing indicated that she "need[ed] to be accommodated for verbal outbursts," insubordination, or disrespectful behavior. And she was fired because of a recorded history of disrespect and insubordination dating back to 2001, not merely because she briefly stepped out, swore, or called her coworker "cellmate Nate" during a staff meeting. She was on a

---

[4] The Agency "does not concede" that Kerwin was disabled or that she was qualified to perform the essential functions of the job. Disability and qualification are the first two elements of a prima facie case of disability discrimination. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016). The other three elements, which are not contested, are that Kerwin suffered an adverse employment decision, the Agency knew or had reason to know of her disability, and that her "position remained open while the [Agency] sought other applicants or the disabled individual was replaced." *Id.* (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011)). However, determination of a disability is not a "demanding standard." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853–54 (6th Cir. 2018). And here, as the district court found, Kerwin presented the Agency with a formal diagnosis of a learning disability, Kerwin testified as to her disability's impact on her ability to sit through lengthy meetings, and the record shows that Hawver regarded Kerwin as having a disability. As for Kerwin's qualifications, the Agency admitted that Kerwin "was qualified for the jobs she held with [the Agency]." Therefore, Kerwin established a prima facie case of disability discrimination.

progressive discipline plan for previously and repeatedly engaging in this kind of disrespectful and insubordinate behavior.

Kerwin's similarly situated comparators argument fares no better. To succeed on this claim, she must "show by a preponderance of the evidence that other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated [her] discharge." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286–87 (6th Cir. 2012) (quotation marks omitted) (quoting *Manzer*, 29 F.3d at 1084).

Kerwin argues that one employee regularly used the "F" word and another often "flipp[ed] the bird." But she does not indicate the context in which these employees regularly used the "F" word or "flipp[ed] the bird," whether these employees were on a progressive discipline plan, or whether they had a documented record of insubordination and disrespect. Because she has failed to demonstrate that these employees "engaged in substantially identical conduct" as her and were not terminated, her argument fails. *Id.* at 287.

Therefore, the district court did not err by holding that Kerwin's evidence of pretext was insufficient or by refusing to credit her similarly situated comparators argument, and we affirm the district court's holding.

**2.**

Next, Kerwin argues that the district court erred by requiring too strict a standard for finding that she reasonably requested an accommodation. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Unlike the other discrimination claims at issue, failure to accommodate claims "necessarily involve direct evidence" and are therefore

analyzed under the direct-evidence framework. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868–69 (6th Cir. 2007). Under the ADA, Kerwin bears the burden of "proposing an accommodation and showing that that accommodation is objectively reasonable." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (quoting *Kleiber*, 485 F.3d at 870). The Agency then bears "the burden of persuasion to show that an accommodation would impose an undue hardship," but an employee "cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation." *Id.* (quoting *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 457 (6th Cir. 2004)).

The Agency did not fail to accommodate Kerwin. Years before she was diagnosed with a learning disability, Hawver said that she would "accommodate [Kerwin] by allowing a break at the end of each hour." After she was diagnosed, the Agency proposed several accommodations, including allowing her to use fidget materials during meetings, getting up and walking around if she was feeling agitated, meeting with her to discuss the meeting agenda, or giving her access to staff notes of the meetings afterwards. Kerwin has not argued that any of these accommodations was unreasonable.

Kerwin argues she was "punished by Defendant" for "exercis[ing] her agreed upon accommodation in the December[] 2018 meeting[] by getting up and briefly leaving the meeting and coming back." This is incorrect. She was disciplined for interrupting discussion and for making comments that she was not going to "follow the proposed changes" or "do what was expected of [her]." Kerwin never asked to be excused from meetings altogether, and to the extent she wanted Hawver to stop meetings while she took her breaks or tell her to leave if she was being disruptive, Hawver's alternative accommodations were reasonable. *See Tennial*, 840 F.3d at 307 ("If denied a requested accommodation, an employee cannot force his employer to provide that

specific accommodation if the employer offers an alternative reasonable accommodation.") (citation omitted).

Kerwin also points out that Hawver said she would alert CEO Toby Berry that she had requested an accommodation and failed to do so, which she contends is evidence that the Agency failed to accommodate her. However, she did not personally ask that the CEO be alerted, and she has offered no evidence that Hawver's failure to alert him departed from the Agency's normal procedures. And notwithstanding Hawver's failure to notify Berry, the Agency made several accommodations and proposed others, none of which Kerwin says were unreasonable.

We affirm the district court's denial of Kerwin's failure to accommodate claim.

**3.**

Kerwin's final argument is that the Agency failed to engage in the interactive process in good faith, and the district court erred in holding otherwise. "[T]he interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber*, 485 F.3d at 871. The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 571–72 (6th Cir. 2023) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014)).

However, Kerwin's argument fails because it is waived. The district court held that she failed to provide factual or legal support for her claim, observing that Kerwin failed to make "a prima facie showing that she requested a reasonable accommodation" or "cite any cases to support [her] assertion[s]." And on appeal, she once again fails to adequately support her claim. Kerwin has not identified any reasonable accommodation request, and she cites no cases aside from those explaining the relevant legal standard. Kerwin never addresses what process the parties

engaged in or explains why that process was insufficient. Her one-paragraph summation that she was "a long-term, excellent performer with a disability" who was fired "although anyone else saying [what she said] would not have been terminated" is not sufficient factual support. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted).

**AFFIRMED**.