NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0797n.06

No. 13-3382

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DONALD P. SNYDER, | ) | **FILED** |
| | ) | Oct 22, 2014 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PIERRE'S FRENCH ICE CREAM CO., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    DAUGHTREY, GIBBONS, and DONALD, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   At the time the controversy in this case arose in the summer of 2010, plaintiff Donald Snyder was a 59-year-old former union employee of defendant Pierre's French Ice Cream Company.  In October 2011, Snyder brought two claims against Pierre's under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1):  a disparate-treatment claim and a hostile-work-environment claim.  In his disparate-treatment claim, Snyder challenged the company's recall decisions following a set of layoffs, alleging that Pierre's decision to depart from its practice of recalling laid-off union employees to part-time and temporary positions only when Snyder was next-in-line for recall constituted age-based discrimination in violation of the ADEA.  In his hostile-work-environment claim, Snyder alleged that numerous comments by his direct manager, John Bittinger, constituted persistent and severe harassment in violation of the ADEA.  Pierre's moved for summary

judgment on both counts. Ultimately, the district court granted both motions and entered summary judgment in favor of Pierre's. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**Disparate-Treatment Claim**

Pierre's is an Ohio corporation that manufactures and distributes ice cream products. In January 2010, the company laid off 11 employees, including seven union members—among them, Snyder. In conducting the layoffs, Pierre's followed the seniority list for the Teamsters Local 336 union, to which Snyder belonged, and thus laid off the least senior union member first. Beginning in May 2010, due to the seasonal uptick in ice cream sales, Pierre's was able to recall some of the union employees that it had laid off, including James Crowder, Roberto Cruz, and Chris Pogozelski, each of whom was more than ten years younger than Snyder. It conducted the recalls in order of seniority, recalling the most senior union member first. After Pogozelski was recalled, Snyder became next-in-line for recall.

Pogozelski then resigned on July 20, 2010, and the company had to decide whether and with whom to replace him. The collective bargaining agreement between Pierre's and the union, which Snyder helped negotiate, granted Pierre's the right to hire a limited number of temporary workers, who then received lower wages than full-time union employees and did not accrue seniority or earn benefits. Because the summer was ending, Pierre's president, Shelley Roth, and David Cillian, Pierre's manager of operations, "decided that it did not make economic sense to bring back a full-time employee for the remainder of the season" to replace Pogozelski. Instead, the company hired a temporary worker, who worked part-time at part-time wages and without benefits for six weeks. Several other part-time, temporary positions became available at Pierre's

while Snyder was at the top of the recall list. Pierre's hired temporary workers to fill each of those positions.

**Hostile-Work-Environment Claim**

In 2007, several years before the lay-offs began, night warehouse manager John Bittinger, who was Snyder's direct supervisor and was then 29 years old, began making age-related derogatory comments toward Snyder, who was 53 at the time. Snyder and another employee, Andrew "Ken" Ashcraft, testified that Bittinger called them both "old man" and told them they were "too slow" on a daily basis over the course of three years. Snyder testified that Bittinger also asked him repeatedly if he needed a walker or a cane and once asked him if he needed an oxygen tank. Bittinger allegedly told him, "Don, nothing against you personally, but if I was in charge, I would never have hired you, you're too old." One day while Snyder was loading the truck, Bittinger asked Snyder, "Can you handle that, old man?" And, when a truck driver came to the warehouse wearing an oxygen mask, Bittinger told Snyder, "That's going to be you pretty soon." Bittinger's comments grew so frequent, Snyder testified, "It was just abuse." Snyder also testified that he liked his job and did it well, and that Pierre's never disciplined, suspended, or terminated him. Still, Bittinger's comments made Snyder feel stressed, aggravated, frustrated, and humiliated, he said. His coworkers would stand around "kind of chuckling" when Bittinger belittled him.

Snyder approached Cillian several times to inform him of Bittinger's harassment. Cillian said he would look into the situation and tell Bittinger to stop making derogatory, age-related comments to Snyder.

**Grievance Process**

Snyder never filed a grievance while he worked at Pierre's, saying later that he feared he would be fired, but he did initiate the grievance process after he was laid off. An arbitrator denied his grievance following a hearing. Snyder subsequently filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC), complaining about Pierre's use of temporary workers and claiming that Bittinger's harassment subjected him to a hostile work environment. The EEOC issued a dismissal and a right-to-sue letter. Snyder then filed this action in federal district court, alleging two claims under the ADEA. Pierre's moved for summary judgment on both counts. The district court granted Pierre's motion for summary judgment as to Snyder's hostile-work-environment claim and denied it as to Snyder's disparate-treatment claim, finding with respect to the disparate-treatment claim that Snyder offered sufficient evidence to proceed to trial. Pierre's then filed a motion asking the district court to reconsider its decision to deny summary judgment as to the disparate-treatment claim. The district court granted the motion for reconsideration and, upon reconsideration, granted summary judgment to Pierre's on the disparate-treatment claim as well. Snyder now appeals the district court's decisions granting Pierre's motion to reconsider and its motion for summary judgment on both counts.

## ANALYSIS

**Disparate-Treatment Claim**

We review a district court's grant of summary judgment *de novo*. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Martello v. Santana*, 713 F.3d 309, 313 (6th Cir. 2013).

The court must view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson*, 477 U.S. at 251-52).

Snyder claims that Pierre's discriminated against him on the basis of his age when it failed to recall him to his job. The ADEA prohibits employers from discriminating against older employees with respect to compensation, terms and conditions of employment, or privileges of employment because of their age. 29 U.S.C. § 623(a)(1). A failure to rehire an individual after a reduction in force can provide the basis of an ADEA claim. *See Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989). In establishing a claim, an ADEA plaintiff may prove age discrimination through direct or circumstantial evidence. *Geiger*, 579 F.3d at 620. If the plaintiff lacks direct evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Snyder offered no direct evidence of disparate treatment—"that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*) (internal citation and quotation marks omitted). Direct evidence may "take the form, for example, of an employer telling an employee, 'I fired you because you are disabled [or elderly].'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). Thus, in order to prove a disparate-treatment claim using direct evidence, Snyder must tie Pierre's adverse employment

decision—here, a failure to recall—to the decision-maker's age-based bias. Given the facts in this record, he cannot do so.

Snyder first attempts to support his disparate-treatment claim with evidence of Bittinger's age-related animus toward Snyder but, in the district court, he failed to offer evidence sufficient to persuade a reasonable jury that Bittinger participated in the decision not to recall Snyder. Although statements of anyone who is "meaningfully involved" in an adverse employment decision may constitute direct evidence, even if that person lacks final decision-making authority, *Wells v. New Cherokee Corp.*, 58 F.3d 233, 238 (6th Cir. 1995), "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). Snyder argues that Bittinger was involved in the recall decision because: Bittinger complained to Snyder and Cillian that the older employees Pierre's hired from temporary staffing agencies were too slow and less productive than younger workers, which, Snyder claims, showed that Bittinger "consulted with Cillian about personnel decisions"; Bittinger's performance review by Cillian stated that "John [Bittinger] always does his best to respond to changes in personnel, inventory and equipment. He consistently assesses his personnel needs based upon who may have called-off and reacts accordingly," which, Snyder claims, provides evidence that Bittinger was involved in and influenced Pierre's hiring decisions; Cillian copied Bittinger and Sullivan on the recall letters sent to Cruz and Pogozelski; and, finally, Bittinger "rode" employees he wanted out of the warehouse, though Snyder identifies only two employees, both of whom were "young guys," as the employees whom Bittinger "rode." No reasonable jury could find, based on this evidence, that Bittinger was involved in Pierre's decisions about whom to recall following the company's layoffs.

Snyder also argues that comments by Sullivan provide direct evidence that the company's failure to recall him was based on age discrimination. Although a reasonable jury might find that Sullivan participated in Pierre's recall decisions, no reasonable jury could conclude that she discriminated against Snyder based on his age. Snyder must offer sufficient evidence that a reasonable jury could "find by a preponderance of the evidence that age discrimination was a determining factor in the employer's decision." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). However, an employee's "personal beliefs, conjecture and speculation [regarding his employer's bias] are insufficient to support an inference of age discrimination." *Id.* Snyder identifies only one discriminatory comment that Sullivan allegedly made to him. According to Snyder's deposition testimony, Sullivan interviewed Snyder about his discrimination complaints and asked him if the manager before Bittinger made any discriminatory comments against him. Snyder testified that he told Sullivan that his prior manager had not made any discriminatory comments. According to Snyder, Sullivan then said, "[Y]ou was much younger back then, Don . . . we was all much younger back then." No reasonable jury could conclude that Sullivan's isolated comment during her investigation of Snyder's allegations constituted age discrimination. *See id.* Snyder was therefore unable to tie the company's recall decision to age discrimination using direct evidence.

Because Snyder failed to offer direct evidence of discrimination, we next address circumstantial evidence of discrimination by applying the *McDonnell Douglas* framework. *Ercegovich*, 154 F.3d at 350 (citing *McDonnell Douglas Corp.*, 411 U.S. at 792). Under that framework, the plaintiff must first "present evidence sufficient to establish a *prima facie* case of age discrimination," *id.*, which, if established, "raises a rebuttable presumption of discrimination." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1390 (6th Cir.

1993) (*per curiam*). If the plaintiff succeeds at this first step, "the burden of production then shifts to the defendant employer to provide a legitimate non-discriminatory reason for the [adverse employment] action." *Id.* If the defendant carries its burden, the burden of production shifts back to the plaintiff. *Id.* At the final stage, the plaintiff must "show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." *Ercegovich*, 154 F.3d at 350. Here, Snyder's claim failed at the first step, when he was unable to offer evidence sufficient to establish the fourth element of a *prima facie* case.

To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate "by a preponderance of the evidence that: (1) he was a member of the protected class (age forty to seventy); (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated worse than a younger person." *Barnhart*, 12 F.3d at 1390. Pierre's concedes that Snyder satisfied the first three elements of a *prima facie* case. To satisfy the fourth element, Snyder must show that Pierre's "replaced him with a younger worker or . . . treated similarly situated, non-protected employees more favorably." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008).

Snyder cannot show that Pierre's replaced him with a younger worker. An allegation that "the employer assigned the former employee's work to an independent contractor that decided to employ younger persons to do the plaintiff's work is, without more, insufficient to establish a *prima facie* case." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 786 (6th Cir. 2007). In this case, Pierre's requested temporary workers from an outside company to fill certain positions, and Snyder offered no evidence that Pierre's requested young workers or played any role in choosing the workers the agency provided. Snyder also failed to offer evidence showing

that Pierre's hired anyone to continue performing his job. Thus, Snyder cannot prove the fourth element of a *prima facie* case by demonstrating that he was "replaced with a younger worker."

Snyder also cannot show that Pierre's "treated similarly situated, non-protected employees more favorably." *Mickey*, 516 F.3d at 522. "[I]n analyzing the treatment of similarly[-]situated employees, the question is whether the plaintiff has demonstrate[d] that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Id.* (internal quotation marks and citation omitted; emphasis in the original). However, the non-protected employee need not "be identically situated to the plaintiff in every single aspect of their employment." *Id.* (internal quotation marks and citation omitted). Here, Snyder was not similarly-situated to the union employees who were recalled because he was lower on the seniority list and, at the time the other union employees were recalled, the company had sufficient work to justify recalling full-time union employees. There is no evidence to suggest that Pierre's had sufficient work to justify recalling Snyder to his full-time position when he was at the top of the recall list. Nor was Snyder similarly-situated to the temporary workers the company employed instead of recalling Snyder because the temporary workers, who are not entitled to the same pay and benefits as union employees, were hired at substantially lower cost to the company. Pierre's was in financial distress around the time of the recalls and exercised its business judgment, in accordance with the collective bargaining agreement, to hire temporary workers in the middle of July to finish out the summer season. Thus, Snyder has failed to show that any of the employees Pierre's recalled or hired were similarly-situated to him in all relevant aspects. Accordingly, we affirm the district court's grant of summary judgment on Snyder's disparate-treatment claim.

**Hostile-Work-Environment Claim**

Snyder's hostile-work-environment claim also lacks merit. To prove a hostile-work-environment claim under the ADEA, a plaintiff must demonstrate that (1) he is older than 40 years; (2) he "was subjected to harassment, either through words or actions, based on age"; (3) "[t]he harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment"; and (4) there is some basis for holding the employer liable. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996). Snyder, of course, satisfies the first element, and a reasonable jury could find that Bittinger subjected Snyder to harassment based on his age. Snyder, however, cannot satisfy the third element of a hostile-work-environment claim.

We assess the totality of the circumstances to determine whether an ADEA plaintiff was subjected to an objectively hostile work environment. *See Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008). Factors we consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Id.* (internal quotation marks and citations omitted). In order to show that the harassment interfered with his work performance, Snyder "need not prove that his . . . tangible productivity has declined . . . . The employee need only show that the harassment made it more difficult to do the job." *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988).

Considering the totality of the circumstances, no reasonable jury could find that Snyder's work environment was objectively hostile. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999). Language and conduct that are "merely offensive" are insufficient to support a hostile-work-environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

The record shows that there was a culture of "shop talk" in the warehouse, and Snyder himself participated in the banter. Bittinger's comments did not interfere with Snyder's ability to perform his job; Snyder stated that he liked his job and was good at it. Snyder was never disciplined, nor did he receive negative performance reviews. Thus, under the totality of the circumstances, Snyder cannot demonstrate that the harassment he alleges was sufficiently severe or pervasive that it created an objectively hostile work environment. The district court thus properly granted summary judgment to the defendant on Snyder's hostile-work-environment claim.

## CONCLUSION

For all of the foregoing reasons, we AFFIRM the district court's decision granting summary judgment to Pierre's on both of Snyder's ADEA claims.