NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0306n.06

Case No. 24-3032

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 16, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| KENNETH CARTWRIGHT, | ) |
| Plaintiff - Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| D.E. FOXX & ASSOCIATES, INC., | ) |
| Defendant - Appellee. | ) OPINION |
| | ) |
| | ) |

Before: GIBBONS, KETHLEDGE, and DAVIS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Before us is Kenneth Cartwright's appeal of the district court's order granting summary judgment to his former employer, d.e. Foxx & Associates ("Foxx" or the "Company"), in Cartwright's suit against the Company for age discrimination. For the reasons that follow, we affirm.

I.

Foxx, through one of its subsidiaries, employed Cartwright in a sales position. In over a year on the job, Cartwright failed to make a single sale. The Company put Cartwright on a performance improvement plan, but nothing changed, and roughly seventeen months after placing Cartwright in his role, Foxx fired him. At the same time, Foxx fired two of Cartwright's colleagues, both of whom similarly failed to generate sales activity. One of those colleagues was ten years Cartwright's junior. Neither Cartwright nor his colleagues were replaced, and their collective responsibilities fell to their supervisor, the sole remaining employee in their department.

Cartwright sued Foxx under the Age Discrimination Employment Act ("ADEA") and Ohio state law, alleging that Foxx fired him because of his age.[1]  During discovery, Cartwright testified that, although no one at the Company ever "directly" told him that his termination stemmed from his age, Foxx's HR representative, Chavon Phillips, told him "[d]uring a conversation when all of this transpired" that the Company was trying to hire younger employees.  DE 18, Cartwright Dep., Page ID 117–18, 159:24–161:4, 122, 180:12–16.  Cartwright further testified that Phillips had broached the topic of younger employees "[e]ven before that, [in] normal conversation."  *Id.* at 122, 180:15–16.

After the close of discovery, Foxx moved for summary judgment, arguing that Cartwright failed to make out a prima facie case of discrimination.  In response, Cartwright changed his story.  In a declaration attached to his brief in opposition to summary judgment, Cartwright claimed that Phillips explicitly told him "at or near the time of [his] termination" that he was fired "because of [his] age of being over 40 . . . so that the company could hire younger employees as part of the organization."  DE 23-2, Decl. of Kenneth Cartwright, Page ID 402.  Cartwright further stated that Phillips discussed the Company's intent to hire younger employees with Cartwright on "4-6 occasions" leading up to his termination, each time during conversations in which Cartwright "was asking [Phillips] for her advice as a HR representative."[2]  *Id.*

The district court granted Foxx's motion for summary judgment, finding that Cartwright's evidence failed to establish a prima facie case.  The court declined to consider the statements in

---

[1]    Cartwright was born in 1964.

[2]    The record contains no evidence about Phillips's precise job, so we cannot conclude whether statements attributed to her are admissible under Federal Rule of Evidence 801(d)(2)(C) or (D).  Because Foxx does not challenge the statements on admissibility grounds, we need not address this evidentiary point.

Cartwright's declaration because they contradicted (or at a minimum, impermissibly expanded upon) his deposition testimony, and it found that Cartwright's remaining evidence, which consisted of one conversation between him and Phillips indicating that Foxx wanted to hire younger employees, proved insufficient to support an inference of age discrimination. *Cartwright v. d.e. Foxx & Assocs., Inc.*, No. 1:22-CV-00038, 2023 WL 8623589, at *5 (S.D. Ohio Dec. 13, 2023) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009) and *Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 772 (6th Cir. 2014)) ("No one younger, in fact no one at all, replaced Cartwright.  And (alternatively), [Foxx] also terminated (similarly situated) [employee] Dave Kopecky, who is 10 years *younger* than Cartwright.").  Cartwright timely appealed.

## II.

Cartwright's appeal presents two questions: first, whether the district court abused its discretion by not considering the statements in Cartwright's declaration, and second, whether Cartwright, with or without the aid of those statements, identified sufficient record evidence for a reasonable juror to find that Foxx terminated him because of his age.  We answer the first question with a partial "yes" and the second question with an unambiguous "no."

## A.

We begin with the district court's refusal to consider the statements in Cartwright's declaration, which we review for abuse of discretion. *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012).  We have many times declined to consider affidavit testimony filed in opposition to summary judgment when it directly contradicts earlier deposition testimony. *See, e.g.*, *Reich v. City of Elizabethtown*, 945 F.3d 968, 977 (6th Cir. 2019).  This practice "is grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier

testimony on that issue by the same party indicates that no such dispute exists." *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 907 (6th Cir. 2006). Were we to permit otherwise, we "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Reich*, 945 F.3d at 976 (quoting *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)).

Yet recognizing that "the deponent is under no obligation to volunteer information not fairly sought by the questioner," *Aerel*, 448 F.3d at 907, we apply "a relatively narrow definition of contradiction," *Reich*, 945 F.3d at 976 (quoting *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006). That is, where a declaration merely "fills a gap left open by the moving party and thus provides the district court with more information, rather than less," we will allow its consideration at the summary judgment stage. *Aerel*, 448 F.3d at 907.

This distinction arises in considering the two statements offered in Cartwright's declaration. On the one hand, Cartwright's assertion that Phillips explicitly told him he was fired because he was over forty years old directly contradicts Cartwright's deposition testimony. Twice during his deposition, Cartwright was asked whether anyone from Foxx said anything to him suggesting that Foxx terminated him due to his age, and twice Cartwright responded, "not directly." DE 18, Cartwright Dep., Page ID 117–18, 159:24–161:4. Cartwright's declaration clearly and directly contradicts this earlier representation, and the district court was right to disregard the inconsistent statement. *See Reich*, 945 F.3d at 977.

On the other hand, Cartwright's claim that Phillips discussed the Company's intent to hire younger employees with him on "4-6 occasions" is more an expansion on his deposition testimony than a contradiction of it. DE 23-2, Decl. of Kenneth Cartwright, Page ID 402. Asked in his deposition "when" his hiring-related dialogue with Phillips occurred, Cartwright answered,

"[d]uring a conversation when all this transpired. Even before that, normal conversation." DE 18, Cartwright Dep., Page ID 122, 180:14–16. This response did not pin down an exact date when — or an exact context in which — Cartwright discussed Foxx's pursuit of younger employees with Phillips, and it left open the possibility that Cartwright and Phillips discussed the topic on multiple occasions. Defense counsel failed to follow up on Cartwright's answer, and Cartwright was under no obligation to elaborate. *See Aerel*, 448 F.3d at 907. Because Cartwright's "4-6 occasions" statement merely clarified his deposition testimony, "provid[ing] the district court with more information, rather than less," the district court abused its discretion when ignoring this portion of his declaration. *Id.*

B.

Whether the district court's error warrants reversal brings us to the second question presented: with the benefit of the allowable testimony from his declaration, has Cartwright identified evidence that, when viewed in the light most favorable to him, raises a triable issue of fact as to the reason for his termination? We find that he has not.

Cartwright's age discrimination claims rest on circumstantial evidence,[3] and he therefore proceeds under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).[4] Within this framework, "the plaintiff must first establish a prima facie case of discrimination; if the plaintiff does that, the employer must identify a legitimate,

---

[3] The only direct evidence of discrimination that Cartwright presents is his declaration testimony that Phillips explicitly told him his termination stemmed from his age. *See Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 530 (6th Cir. 2014) ("Direct evidence is evidence that proves the existence of a fact without requiring any inferences.") (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). Because we disregard that portion of the declaration, Cartwright's claim proceeds on indirect evidence alone.

[4] We analyze Cartwright's Ohio state law claim under the same standards as his ADEA claim. *See Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009).

nondiscriminatory reason for the adverse employment action; and if the employer does that, the plaintiff must prove that the employer's reason is a mere pretext for discrimination." *Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 209 (6th Cir. 2021). We review the district court's grant of summary judgment de novo. *Id.*

*Prima Facie Case.* Cartwright's prima facie burden is fourfold. Initially, Cartwright must demonstrate: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Only the fourth element is in dispute here.

Ordinarily, an age discrimination plaintiff establishes the fourth element of his prima facie case by demonstrating that his employer replaced him with someone significantly younger or "treated similarly situated, non-protected employees more favorably." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521–22 (6th Cir. 2008)). Yet Cartwright can do neither, and he therefore relies on cases where we found that management's ageist pejoratives and similar age-related comments gave rise to a rebuttable inference of discrimination. *See, e.g.*, *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021). Pointing to Phillips's assertions that Foxx was pursuing younger employees, Cartwright argues that his circumstances are of a piece with this body of caselaw.

Even viewed in the light most favorable to Cartwright, we harbor significant doubt that Phillips's statements support an inference of discrimination. Cartwright is correct that on several occasions, we have found that an age discrimination plaintiff met his prima facie burden by pointing to age-related remarks from his employer alone. *See, e.g.*, *id.* And Cartwright is also correct that his prima facie burden is a light one. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d

806, 813 (6th Cir. 2011) (age discrimination plaintiff's "burden at the prima facie stage is 'not onerous' and 'poses a burden easily met'" (quoting *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000))).  Nevertheless, the cases in which an employer's age-related comments raised a plausible inference of discrimination are distinguishable from Cartwright's circumstances in two meaningful respects.  First, in that narrow universe of cases, the remarks typically came from an individual with decision-making or managerial authority over the plaintiff.  *See Blair v. Henry Filters, Inc.*, 505 F.3d 517, 530 (6th Cir. 2007) (derogatory remarks made by plaintiff's "direct supervisor"); *Pelcha*, 988 F.3d at 325 (remarks made by employer's "President and CEO . . . the individual who terminated [the plaintiff]"); *see also Liebau v. Dykema Gossett, PLLC*, No. 23-1301, 2024 WL 1739750, at *4–5 (6th Cir. Apr. 23, 2024) ("We have explained that conduct of a nondecisionmaker may be probative of whether an adverse action directed at a plaintiff occurred under circumstances supporting an inference of discrimination.  Discriminatory statements made by individuals occupying managerial positions, moreover, can be particularly probative of a discriminatory workplace culture." (citations and internal quotations omitted)).  Here, Cartwright fails to identify any evidence suggesting that Phillips possessed decision-making or managerial authority over him, so Phillips's comments are minimally probative as to the motivations underlying Cartwright's termination.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998) ("[D]iscriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination . . . .").

Second, Phillips's statements are substantively dissimilar from the employer statements and conduct that we have previously found sufficient to establish a prima facie case.  In *Blair*, the plaintiff's supervisor "(1) repeatedly mocked [the plaintiff]'s age, (2) removed [the plaintiff] from a lucrative account because of his age, and (3) told other employees that he wanted younger

salesmen." 505 F.3d at 530. In *Pelcha*, the defendant employer's CEO commented that the plaintiff's octogenarian coworker "had reached her 'expiration date'" and that he "intended to reduce [the plaintiff]'s hours until she quit." 988 F.3d at 325. And in *Liebau*, the plaintiff's manager "(1) threw her a fiftieth birthday party involving a wheelchair, adult diapers, and fake pills, (2) refused to remove the wheelchair from near [the plaintiff]'s workspace despite frequent requests to do so, and (3) repeatedly broached the topic of [the plaintiff]'s retirement." 2024 WL 1739750, at *4. Measured against these remarks and actions, Phillips's observation that Foxx was interested in hiring younger employees, even if offered on multiple occasions, strikes us as relatively innocuous. *See Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) ("Even if [the plaintiff's former employer] wanted to attract young people, that says *nothing* about terminating older employees."). This is particularly true where Phillips's statements are not buttressed by any of the more inflammatory indications of age-related bias that we've chronicled in other cases. *See Ercegovich*, 154 F.3d at 356 ("[W]hen assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks . . . we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another[.]").

Still, Phillips's statements exhibit some inculpatory characteristics. Phillips is Foxx's HR representative, so even without direct decision-making authority over employees like Cartwright, she presumably possesses some well-informed insights into management's hiring and firing practices. *Cf. Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009) ("Discriminatory statements made by individuals occupying managerial positions can be particularly probative of a discriminatory workplace culture."). Phillips also offered her hiring-related observations several times, suggesting that her commentary was not the kind of "stray remark" that we have elsewhere

dismissed as insignificant. *See Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 118 (6th Cir. 2007); *see also Rowan*, 360 F.3d at 549. And importantly, Phillips's comments to Cartwright shared a meaningful nexus with Foxx's decision to terminate Cartwright, as Phillips offered her observations while Cartwright was asking her for advice, presumably as it concerned the performance improvement plan that management imposed three months before his termination. *See Ercegovich*, 154 F.3d at 355 ("[A] direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value.").

Ultimately, and as will shortly become evident, we need not resolve this close call to decide Cartwright's appeal. We therefore assume, without deciding, that Phillips's statements to Cartwright support an inference of discrimination and that Cartwright in turn met his prima facie burden. *See Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (assuming without deciding that plaintiff established a prima facie case of employment discrimination). We thus turn to the latter two steps in the *McDonnell Douglas* framework.

*Nondiscriminatory Reason*. Foxx articulates a legitimate, nondiscriminatory reason for terminating Cartwright: Cartwright's failure to produce any sales. *See Majewski v. Automatic Data Processing*, Inc., 274 F.3d 1106, 1116 (6th Cir. 2001) (finding that "increasingly poor job performance" was a legitimate, nondiscriminatory reason for plaintiff's discharge). The burden therefore shifts back to Cartwright to demonstrate a genuine issue of material fact as to whether Foxx's proffered rationale was, in reality, a pretext for discrimination.

*Pretext*. To demonstrate pretext, Cartwright bears the burden to produce evidence from which a reasonable jury could reject Foxx's explanation for why it fired him. *See Blizzard*, 698 F.3d at 285. Typically, an age discrimination plaintiff does so by showing that his employer's stated explanation (1) has no basis in fact, (2) did not actually motivate his termination, or (3) was

insufficient to warrant his termination. *Willard*, 952 F.3d at 810. But these are not the exclusive means of demonstrating pretext, and "plaintiffs remain free to pursue arguments outside these three categories." *Miles*, 946 F.3d at 888. The inquiry, at its core, is a simple one: "did the employer fire the employee for the stated reason or not?" *Id.* (quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). While this inquiry ultimately merges with Cartwright's larger burden to demonstrate that Foxx terminated him on account of his age, Cartwright's sole obligation at summary judgment is to marshal evidence that rebuts — in the mind of a reasonable juror — Foxx's proffered explanation. *Willard*, 952 F.3d at 810.

Cartwright fails to do so here. As best we can tell, Cartwright argues that his job performance did not actually motivate his termination because Foxx imposed unrealistic and vague sales expectations that it knew Cartwright could not meet. As evidence that Foxx's sales expectations were unachievable, Cartwright points out that his supervisor struggled to explain how the expectations were formulated, that the expectations did not account for the general downturn in business resulting from the COVID-19 pandemic, that the expectations were not adjusted for the time that Cartwright spent on furlough or out sick, and that Cartwright's supervisor did not meet with him weekly (as his performance improvement plan indicated would occur). In a nutshell, Cartwright argues that he was "set up to fail." CA6 R. 15, Appellant Br., at 33. And together with Phillips's comments regarding Foxx's hiring practices, Cartwright argues, this preordained failure demonstrates that his inability to produce sales was mere pretext for his age-related firing.

A reasonable juror could not infer from these facts that Foxx's stated rationale was pretextual. Whatever the finer details of Cartwright's performance expectations, or Foxx's capacity to explain them, Cartwright does not contest that he failed to make a single sale in over

seventeen months of employment. We have previously stated that a plaintiff's disagreement with his employer's "honest business judgment regarding his work does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Majewski*, 274 F.3d at 1116. It cannot be denied that a salesperson's failure to make a sale over a prolonged period is a reasonable basis for his employer to be dissatisfied. And while Cartwright's evidence *might* cast doubt on his supervisor's competence or the consumer appetite for Foxx's services, it does not cast doubt on the sincerity of Foxx's belief that a salesperson should be held accountable for not making sales. *See id.* Any lingering doubt as to the rationale underlying Cartwright's termination is quickly extinguished when recalling that two of his sales colleagues — one of whom was ten years Cartwright's junior — were simultaneously terminated for the same reason.

## C.

In sum, Cartwright fails to identify evidence that would allow a reasonable factfinder to infer that Foxx's stated reason for terminating him was pretextual and that his employment was instead terminated because of his age. Summary judgment in favor of Foxx was appropriate, and the district court's failure to consider portions of Cartwright's declaration was harmless error. *See* Fed. R. Evid. 103(a).

## III.

For the foregoing reasons, we affirm.